United States District Court
Southern District of Texas

**ENTERED**

October 31, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-15-228-1 |
| | § | CIVIL ACTION NO. H-18-185 |
| WALID HAMOUDI, | § | |
| | § | |
| Defendant-Movant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Walid Hamoudi's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 93),[1] and Memorandum in Support (Document No. 94), the United States' Response (Document No. 111), and Movant's Reply (Document No. 115). Movant has also filed a Motion for Leave to Supplement his § 2255 Motion. (Document No. 121). After reviewing Movant's § 2255 Motion, the Government's Answer, Movant's Reply, Movant's Motion to Supplement, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Walid Hamoudi's § 2255 Motion to Vacate, Set Aside, or Correct Sentence and Motion to Supplement § 2255 Motion  be DENIED.

## I.    Procedural History

Movant Walid Hamoudi  ("Hamoudi") who is currently in the custody of the United States

---

[1] Walid Hamoudi's  Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-18-185 and at Document No. 93  in Criminal Action No. H-15-228. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Hamoudi's first attempt at § 2255 relief.

On April 29, 2015, Hamoudi and Geraldine J. Caroline were charged by Indictment. (Document No. 1). Hamoudi was charged with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1), conspiracy to pay and receive health care kickbacks in violation of 18 U.S.C. § 371 (Count 2), aiding and abetting the payment and receipt of health care kickbacks in violation of 42 U.S.C. § 1320a-7(b), 18 U.S.C. § 2 (Counts 3-7), and conspiracy to commit laundering of monetary instruments in violation of 18 U.S.C. § 1956(h) (Count 8). On August 12, 2015, Hamoudi pleaded guilty to Count 1 of the Indictment pursuant to a written Plea Agreement. (Document No. 34; Transcript of Rearraignment, Document No. 99). The written Plea Agreement is signed by Hamoudi and was discussed at the Rearraignment. The signed written Plea Agreement makes clear that Hamoudi "is pleading guilty freely and voluntarily" (Document No. 34, ¶ 29), and contains an Addendum, also signed by Hamoudi, that states that he: "consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Agreement and I voluntarily agree to its terms." (Document No. 34, p. 17). Moreover, the transcript of the Rearraignment hearing confirms that Hamoudi understood the general terms of the plea agreement, the charges against him, the elements of the crime, the rights he would give up if he pleaded guilty, the possible penalties, the sentencing process, that he had discussed the plea agreement with his attorney and that he understood the terms. (Document No.99, p. 4-14).

2

The record further reflects that the Government summarized the facts that it was prepared to prove if the case proceeded to trial.  (Document No. 99, p. 15-16).   In response, Hamoudi confirmed the accuracy of the summary and his role in the offense. (Document No. 99, p. 16).  The Prosecutor stated:

> Yes, Your Honor.  The evidence at trial should show that the defendant, along with others, owned and operated dynamic PHP, which is a facility that purported to provide psychiatric partial hospitalization program services on behalf of Riverside General Hospital.  The defendant invested thousands of dollars in this facility and oversaw its day-to-day operations, including paying kickbacks to patient recruiters and group home owners to induce them to send Medicare beneficiaries to Dynamic.
>
> For example, defendant paid kickbacks to group home owner Geraldine Caroline in exchange for Ms. Caroline sending residents of her group home to Dynamic, who did not qualify for these services.
>
> Even though the defendant knew that many of these patients who attended Dynamic did not need or receive these PHP services, the defendant continued to submit claims to Riverside for billing to Medicare for PHP services that were not medically necessary and never provided.
>
> Upon receiving payment from Medicare, Riverside would then pay the defendant a portion of these payments, and the defendant would use these funds to promote the fraud scheme by paying kickback payments to the recruiters.
>
> From in or about May 2010 through April 2011, Riverside submitted claims to Medicare totaling approximately $5.2 million, including approximately $386,100 submitted to Medicaid for these PHP services that were never provided.  And Medicare paid Riverside approximately 41.6 million on these claims of which the defendant received a portion of those payments.
>
> The Court:  Mr. Hamoudi, can you tell me in your own words what it is you did to commit the crime you are pleading guilty to this morning?
>
> The Defendant:  Yes.  I formed a corporation that committed Medicare fraud, which included rendering treatment that was medically unnecessary for patients and also filing claims for these patients, plus paying kickbacks to homeowners.

(Document No. 99, p. 15-16).

Prior to sentencing, a Pre-Sentence Investigation Report ("PSR") was prepared. (Document No. 60). Hamoudi filed written objections to the PSR (Document No. 59).[2] With respect to calculating his guideline sentence, Hamoudi had a base offense level of 26. Because Hamoudi participated in the systematic manipulation of numerous Medicare beneficiaries who were fraudulently placed in PHP treatment programs that were not medically necessary for extended periods, and who were not provided proper and timely medicare care but were used to generate revenue for Dynamic and Riverside, and because Hamoudi is considered to have known or should have known that a victim was a vulnerable victim, his offense level was increased by two levels pursuant to U.S.S.G. § 3A1.1(b)(1). Because Hamoudi was an organizer/leader of criminal activity that involved five or more participants or was otherwise expense, his offense level was increased by four levels pursuant to U.S.S.C. § 3B1.1(a). Because Hamoudi accepted responsibility and did so in a timely manner, his offense level was decreased three levels.[3] With an adjusted offense level of

---

[2] The record shows that Hamoudi raised several objections to statements made by actors other than coconspirators in paragraphs 39, 50, 51, 52, 61, and 73, and interviews of patients of Devotions PHP set forth in paragraphs 64-68. Hamoudi also argued that he should only be held accountable for sentencing purposes for the period of time he was co-owner and operator of Dynamic PHP from on or about May 2010 through April 2011. Also Hamoudi objected to the two point upward sentencing adjustment for use of sophisticated means, and the four point adjustment for involvement of vulnerable victims.

[3] The record reflects that Hamoudi, in accepting responsibility, wrote:
From on or about May 2010 through April 2011, I. Walid Hamoudi, conspired with others to commit health care fraud. I was the investor/owner of Dynamic PHP, a business that provided psychiatric partial hospitalization services on behalf of Riverside General Hospital. At Dynamic, many patients who attended Dynamic did not need or receive PHP services. Despite this, we continued to submit claims to Riverside for billing Medicare for PHP services that were not l

29, and with a criminal history category of I, Hamoudi had an advisory guideline sentencing range of 87 to 108 months. The record further shows that Hamoudi filed a Memorandum in Aid of Sentencing. (Document No. 73). In that Memorandum, Hamoudi argued that his participation in the offense lasted only eleven months. He sold Dynamic PHP to Riverside General Hospital in April 2011, and the business name was changed to Caroline PHP, and was operated by William Bullock and Robert Ferguson, who, in turn, began new illegal PHP's similar to Dynamic and that co-defendant Geraldine Caroline, continued to pursue kickbacks in exchange for providing patients. The Sentencing Memorandum states, in pertinent part: "Per discovery, Mr. Bullock began a program similar to PHP in Houston, and he offered to pay a confidential informant $1,500 every time she supplied 10 patients to the program. In December 2011, Mr. Ferguson worked at another PHP with approximately 100 patients, and that PHP also had patient recruiters. Ms. Caroline provided people from her group home as patients to several PHPs, and, at one location, she was allegedly paid $10,000 per month for her services. Dr. Hamoudi's sentence should reflect his relatively short period of criminal activity." (Document No. 73, p. 3). He further argued for a four level offense level pursuant to U.S.S.G. § 3B1.2 or a downward variance. Lastly, he pointed to his age, and family circumstances.

On January 20, 2017, Hamoudi was sentenced to a term of imprisonment of 60 months, to be followed by a three year term of supervised release, a $100.00 special assessment, and restitution totaling $1,638,189. Judgment was entered on February 3, 2017. (Document No. 79). Hamoudi did

---

medically necessary or were never provided. Furthermore, kickbacks were paid to group home owners for sending patients to Dynamic.

I am sorry I committed this offense and I ask the Court for credit for acceptance of responsibility. (Document No. 60, ¶ 66).

not file an appeal of his conviction or sentence.  Therefore, Hamoudi's conviction  became final on February 3, 2017, when the time to file a notice of appeal expired, fourteen days after entry of Judgment.  *See* Fed. R. App. P. 4(b)(1)(A)(I);  *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008).

On January 22, 2018, Hamoudi  timely filed the instant § 2255 motion. He has also moved to supplement his § 2255 motion. Hamoudi raises a claim of ineffective assistance of counsel. The Government has responded and has moved to dismiss Hamoudi's  § 2255 motion because his claim fails as a matter of law.

## II. Discussion

Hamoudi claims that his attorney was ineffective at the pretrial state of the proceedings by failing to inform him that he had the right to confront his accusers at a preliminary hearing, and, waiving his right to the hearing.  Hamoudi contends that between 2015 and 2017, he met with his counsel ten times and discussed sentencing ranges, and at no point, did counsel advise him that he had a right to a preliminary hearing or to confront his accusers.  (Document No. 94, p. 3-4). According to Hamoudi, had there been a preliminary hearing, it is likely the Indictment would have been dismissed, and that with discovery gleaned at the preliminary hearing, that he would have insisted on going to trial because the Indictment was based on unreliable witnesses, his former partners at Dynamic, Robert Ferguson and William Bullock III, and William Bullock's then girlfriend, Leslie Clark.  Hamoudi claims that they alone participated in the conspiracy as recruiters, not him, and that they were previously convicted felons. Hamoudi maintains that "it is inconceivable that Movant would offer <u>free</u>  transportation services in furtherance of the goal of unlawfully enriching himself." (Document No. 94, p. 5)(emphasis in original).  The Government has responded

6

and argues that Hamoudi's counsel was not ineffective because Hamoudi did not have a right to a preliminary hearing, and as a result, his attorney's performance did not fall below that of *Strickland*. The Magistrate Judge agrees.

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id.* at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

In *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), the Supreme Court held that the Sixth amendment right to counsel extends to the plea-bargaining process. The Supreme Court held that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Id.* at 58. With respect to the prejudice inquiry in the guilty plea context, the Supreme Court in *Hill* opined that a defendant must show"that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 162-63. During the 2017 term, the Supreme Court in *Lee v. United States*, ___U.S.___, 137 S.Ct. 1958, 1966 (2017), instructed that such a review should be "a case-by-case examination of the totality of the evidence" and to look at contemporaneous evidence. *Id.* at 1966. The Supreme

7

Court wrote:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010, and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed. 2d 634 (1979).  Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.   Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Id.* at 1967.

"We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir. 1997)).  Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)). With respect to ineffective assistance of counsel claims, the Court in *Harrington v.  Richter*,  562 U.S 86, 131 S.Ct.  770, 778 (2011) observed that "[t]here are, [ ] 'countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.'  Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id.*  at 788-89 (quoting from *Strickland*, 466 U.S. at 689).    As a result, counsel's performance does not fall below that guaranteed by the Sixth Amendment where it can be shown that counsel formulated a strategy that was reasonable at the time and balanced limited resources with effective trial tactics and strategies. *Harrington*, 131 S.Ct.  at 789.  "Just as there is no expectation that competent counsel will be a

8

flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S.Ct. at 791. Moreover, "it is difficult to establish ineffective assistance when counsel's *overall* performance indicates active and capable advocacy." *Harrington*, 131 S. Ct. at 791 (emphasis added).

Hamoudi's claim that counsel waived his right to preliminary hearing without his consent fails as a matter of law. Hamoudi's initial appearance was for an arraignment on an *indictment* that had been returned by a grand jury, who had made a probable cause determination that Hamoudi committed the offenses charged in the Indictment. (Document No. 7). Hamoudi was not entitled to a preliminary hearing. *see* Fed.R.Crim.P. 5.1(a)(2)("If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless the defendant is indicted."). Because Hamoudi had been charged by Indictment, counsel's performance did not fall below that of *Strickland*. Further, Hamoudi's arguments that discovery gleaned during the preliminary hearing, could have changed his decision to plead guilty, are highly speculative. "[T]he primary function of a preliminary hearing is not to expedite discovery. The purpose of such a hearing is to ascertain whether or not there is probable cause to warrant detention of the accused pending a grand jury hearing. While some manifestation of the quantum of a prosecutor's evidence is necessary for a qualitative evaluation of probable cause, such discovery remains incidental to the true purpose of the proceeding." *United States v. Coley*, 441 F.2d 1299, 1301 (5th Cir. 1971)(citations omitted). In addition, the contemporaneous record of Hamoudi's Rearraignment Hearing, shows that he made several sworn statements that are inconsistent with his assertions in the instant § 2255 motion. The law is clear that sworn statements in open court are entitled to a strong

presumption of truthfulness. *United States v. Lampaziamie*, 251 F.3d 519, 524 (5th Cir. 2001). Hamoudi admitted that he had read the plea agreement, and he admitted to his involvement in the conspiracy. The contemporaneous record undermines his ineffectiveness allegations that he would not have taken the plea and insisted on going to trial. *see United States v. Crain*, 877 F.3d 637, 650 (5th Cir. 2017)(explaining that "self-serving post hoc assertions about how [the defendant] would have pled" do not negate the contemporaneous comments at the plea hearing).

Hamoudi has raised additional ineffectiveness claims in a Supplement filed on or about August 27, 2018, six months after the expiration of the one-year statute of limitations deadline. Hamoudi claims that counsel was ineffective for failing to conduct any investigation and failing to assert an actual innocence defense. Hamoudi argues that the claims, relate to and amplify claims raised in his timely filed § 2255 motion, and, in the alternative, are timely because they show his actual innocence.

Rule 15 applies to amendments of § 2255 motions. *See United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002)(Every circuit that has addressed this issue agrees that the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) does not render Rule 15 inapplicable to federal habeas proceedings.). Fed.R.Civ.P. 15(c) provides in part that the court, in its discretion, may allow an amendment that clarifies or amplifies a claim or theory in a timely filed § 2255 motion after the-year statute of limitation of AEDPA has expired. *United States v. Thomas*, 231 F.3d 430, 433-34 (3rd Cir. 2000). In contrast, an amendment under Rule 15(c) should not be allowed where the movant seeks to add a new claim or new theory of relief. The Supreme Court in *Mayle v. Felix*, 545 U.S. 644, 654-656 (2005) confirmed that the "relation back" doctrine in Fed.R.Civ.P. 15(c) applies to federal habeas corpus proceedings. The Court, however,

cautioned that "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. The relation back doctrine is strictly applied in federal habeas corpus proceedings. *United States v. Ciampi*, 419 F.3d 20, 23-24 (1st Cir. 2005), *cert. denied*, 547 U.S. 1217 (2006). Here, the ineffectiveness claims alleged are not similar to his claim that counsel was ineffective for waiving his right to a preliminary hearing. *See United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009)(finding that "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision"). Because the proposed amended claims of ineffective assistance go beyond the operative facts of the claim raised in the initial § 2255 motion, Hamoudi's motion to amend is untimely.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted. Pursuant to § 2255(f), the one-year limitation period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Because Hamoudi filed the instant § 2255 motion after the effective date of AEDPA, the

provisions of the statute apply. Hamoudi's additional claims raised in his August 27, 2018, filing, were filed nearly six months after the expiration of the one-year limitations period. Under these circumstances, Hamoudi's additional claims are untimely under § 2255(f)(1), and are subject to dismissal absent a showing that an alternate date for commencement of the limitations period should be applied under § 2255(f)(2)-(4) or that the limitations period should be equitably tolled. As discussed above, none of Hamoudi's s new claims clarify or amplify a claim or theory that he raised in his timely filed § 2255 motion. *See United States v. Thomas*, 221 F.3d 430, 433-34 (3rd Cir. 2000); *United States v. Duffus*, 174 F.3d 333(3rd Cir.), *cert. denied*, 528 U.S. 866 (1999). A movant cannot circumvent AEDPA by filing a "place holder" § 2255 motion then later rely on Federal Rule of Civil Procedure 15(c) to add additional claims after the one year limitations period expires.

As for the alternative commencement dates for the one year limitation period provided for in § 2255(f)(2), (3), and (4), none applies. Hamoudi has not alleged that he was in any way impeded from including the claims in his timely filed § 2255 motion.

Furthermore, upon this record Hamoudi has not shown that the limitations period should be equitably tolled. The law is clear that only rare and exceptional circumstances may warrant the application of equitable tolling principles to an untimely filed claims under § 2255 Motion to Vacate, Set Aside or Correct Sentence. *United States v. Petty*, 530 F.3d 361, 364-65 (5th Cir. 2008); *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000). Equitable tolling, however, is not available if the Movant does not act diligently in attempting to meet the one year limitations deadline. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000). Additionally, the Fifth Circuit has approved the application of equitable tolling in very limited circumstances, "'principally where the plaintiff is actively misled by the defendant about the cause

12

of action or is prevented in some extraordinary way from asserting his right.'" *Fierro* v. *Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002)(quoting *Coleman*, 184 F.3d at 402. The Fifth had disapproved of the application of equitable tolling for circumstances which are "garden variety claims of excusable neglect." *Lockingbill v. Cockrell*, 239 F.3d 256, 265 (5th Cir. 2002). The Movant must show "'that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented a timely filing.'" *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010)(quoting *Pace v. DiGugielmo*, 544 U.S. 408, 418); *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

Here, Hamoudi filed his additional claims too late. Given the absence of any facts in the record which would constitute rare and exceptional circumstances, equitable tolling of the limitations period is not applicable.

Because Hamoudi's additional claims were not timely filed and because there are no grounds available to toll the limitations period, his additional claims should be denied as time-barred.

### III. Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that Movant Walid Hamoudi's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 93) and Motion for Leave to Supplement § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 121) be DENIED. It is FURTHER RECOMMENDED that Movant's pending discovery motions (Document Nos. 144, 137, 120, 129) be DENIED as MOOT.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written

objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 31st day of October, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE